# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ABRAHAM DAVIS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1866 (RMU) |
| | : | | |
| v. | : | Document No.: | 40 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND *SUA SPONTE* DISMISSING IN PART THE PLAINTIFF'S CLAIMS

## I.  INTRODUCTION

This employment discrimination case comes before the court on the defendant's motion for summary judgment.  The plaintiff, Abraham Davis, brought this action against the defendant, the District of Columbia, alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623 *et seq*., ("ADEA"), and the District of Columbia Whistleblower Protection Act, D.C. Code §§ 1-615.51 *et seq.* (2005), ("Whistleblower Act").  For the following reasons, the court grants in part and denies in part the defendant's motion for summary judgment and in part dismisses *sua sponte* the plaintiff's claims.

## II.  BACKGROUND

The plaintiff's claims stem from four alleged adverse employment actions: his denial of

comparable pay at the DS-14 level and three nonselections for promotion.  *See generally* Second

Am. Compl.  The plaintiff, a 67-year-old male, has been working for the defendant, the District

of Columbia, since 1972.  *Id.* ¶ 6.  He eventually became a DS-13 Public Health Analyst for the

Department of Health in the Maternal and Family Health Administration ("Family Health").

Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 2.  In August 1999, the plaintiff's

supervisor Michelle Davis asked him to develop a Men's Health Initiative ("MHI") to parallel

the efforts already being implemented by the Women's Health Initiative.  Pl.'s Opp'n, Ex. 4

("Davis Decl.") ¶ 4 & Ex. 12 at 2.  As the program developed, the plaintiff took on the

responsibilities of Project Director and Coordinator[1] for MHI.  *Id.*, Ex. 12 at 2.

### A.  Denial of Comparable Pay

The plaintiff claims his troubles began when Marilyn Seabrooks Myrdal ("Seabrooks")

replaced Davis as the Chief of Family Health in May 2000.  Pl.'s Opp'n at 4; Davis Decl. ¶ 7.

In "late 2000/early 2001," the plaintiff asked Seabrooks for a promotion to the DS-14 level for

his work as MHI Coordinator, but Seabrooks denied the pay increase.[2]  Pl.'s Opp'n at 30.  In her

deposition, Seabrooks indicated that while "there was really no discussion" specifically about the

appropriate grade for the MHI Coordinator position when the plaintiff requested the promotion,

management had an interest in establishing parity between the men's and women's positions.

*Id.*, Ex. 48 ("Seabrooks Dep.") at 252:9-14.  Joyce Brooks, a Family Health manager familiar

---

[1]     It is unclear from the plaintiff's opposition when he was promoted to Project Director and Men's
Health Initiative ("MHI") Coordinator.  A Department of Health Newsletter from July 2000
indicates that the plaintiff was the program's Project Director.  Pl.'s Opp'n to Def.'s Mot. for
Summ. J., Ex. 7 at 3.  The plaintiff asserts that he became MHI Coordinator sometime after June
17, 2000.  *Id.* at 3.

[2]     The plaintiff's opposition does not state precisely when he asked Seabrooks for a promotion to
the DS-14 level, but the request occurred sometime after the plaintiff had assumed his duties as
MHI Coordinator.  Pl.'s Opp'n at 30.  Therefore, the plaintiff must have requested the promotion
between June 17, 2000 and February 15, 2001, when he withdrew as MHI Coordinator.

with the Men's and Women's Health Coordinator positions, later testified that both positions

should be at the DS-14 level, *id.*, Ex. 8 ("Brooks Dep.") at 63:22-64:5, and management later

forwarded selection certificates[3] to Seabrooks that listed the position at the DS-14 level.  *Id.*, Ex.

25 (Selection Certificate, Dec. 2001), Ex. 29 (Selection Certificate, July 2002), Ex. 39 (Selection

Certificate, Jan. 2004).  Seabrooks eventually hired the plaintiff's replacement, Dr. Jackson Lee

Davis II ("Dr. Davis"), at the DS-14 level in 2004.  *Id.* at 31.

### B.  Nonselections For Promotion

In early 2001, the plaintiff and Seabrooks's relationship deteriorated substantially.  On

April 1, 2002, Bernardine Booker Brown, an Equal Employment Opportunity ("EEO") Officer,

concluded that "supervisor/supervisee relations are so poor at this time that no beneficial

relationship individually, as a team, or to the Department can come of this pairing."  *Id.*, Ex. 27

at 2338.  Brooks, a Family Health supervisor and Seabrooks's friend, testified that the plaintiff

and Seabrooks in general display "shrewd behavior toward one another," and "both have an axe

to grind with one another."  Brooks Dep. at 158:7-8, 15-16.

At the end of 2001, the plaintiff began applying for promotional positions within Family

Health.  *Id.* at 9.  In total, he submitted six applications for three positions, but he was never

selected.  *Id*. at 9-10, 12, 15.  First, in November 2001, he applied for the Public Health Advisory

Officer/MHI Coordinator Position ("Officer position"),[4] and Seabrooks received the selection

certification on December 19, 2001 with the plaintiff listed as the only candidate.  *Id.* at 9.

Seabrooks returned the selection certificate on January 28, 2002 having not selected the plaintiff

---

[3]     A selection certificate is defined as a "list of eligible candidates from a register for appointment to
a position submitted by a personnel authority to a public official."  D.C. Personnel Regulations,
Chap. 38, Part I, § 3899.

[4]     It appears that this is the same position that the plaintiff held from August 2000 until February 15,
2001.  Pl.'s Opp'n at 15, 28.

"based on professional knowledge of applicant's work ethics and practice." *Id.*, Ex. 25.

Second, the plaintiff applied for the Deputy Maternal and Child Health Officer Position ("Deputy position"), which opened on December 10, 2001. *Id.* at 9. Seabrooks received the selection certificate listing two D.C. residents (the plaintiff and another highly qualified candidate), but she returned the certificate on March 8, 2002 without selecting either candidate. *Id.* at 11 & Ex. 26. Seabrooks again wrote that she did not select the plaintiff "[b]ased on professional knowledge of candidate's work ethics and practice," while for the other candidate she did not submit remarks. *Id.*, Ex. 26.

Third, the plaintiff applied on December 20, 2001 for the Supervisory Public Health Analyst Position ("Analyst position"), which opened on December 11, 2001. *Id.* at 9. Although the Vacancy Announcement indicated that Human Resources would begin to evaluate the applications on December 26, 2001, management prematurely requested the selection certificate on December 19, 2001. *Id.* at 10. In her deposition, Seabrooks testified that management expedited the certificate because it needed to fill the position immediately to receive departmental bonus dollars that had recently become available. Seabrooks Dep. 246:18-247:5. Colleen Whitmore, a Maryland resident who had been working in that position temporarily since October 2001, applied for the position on December 17, 2001. Pl.'s Opp'n at 9-10, 23 & Ex. 24. Because she was the only applicant listed on the certificate at the time management made the expedited request, they accepted her application on December 20, 2001 without conducting an interview. *Id.*, Ex. 23 at 2. According to the returned selection certificate, management did not receive the plaintiff's application until after selecting Whitmore. *Id.*, Ex. 23 at 2.

While seeking these promotions, the plaintiff remained employed as an analyst for Family Health, and on March 15, 2002, Seabrooks relocated him to another office where he was

4

the only Family Health employee located in the building who reported to Seabrooks.  *Id.* at 13.
The plaintiff alleges that, as a result, he suffered the strain of relocating and the loss of his
parking privileges.  *Id.*  Seabrooks did not, however, relocate his female coworkers, who were
able to keep their parking privileges.  *Id.*

The plaintiff continued to apply to the Officer and Deputy positions without success.  *Id.*
at 12.  He applied a second time for the Officer position in July 2002, as the only highly qualified
candidate, but Seabrooks returned the selection certificate without selecting him on September
25, 2002.  *Id.*, Ex. 29.  In August 2002, the plaintiff and another candidate, William Hunter,[5]
applied for the Deputy Position, and on December 23, 2002, Seabrooks returned the selection
certificate without selecting either candidate.  *Id.*, Ex. 30.  While Hunter recalled only submitting
one application for the Deputy Position, *id.*, Ex. 33 (Hunter Dep., 9:12-17, May 9, 2006), his
name appeared on a second selection certificate along with a nonresident female for the position
on January 6, 2003.  *Id.*, Ex. 32.  The plaintiff alleges that Seabrooks sent a memorandum to the
D.C. Office of Personnel requesting the plaintiff's name be excluded from future selection
certificates for the Deputy position.  *Id.*, Ex. 31.  This, the plaintiff argues, was to sidestep the
preference given to D.C. residents.  *Id.* at 27; D.C. Municipal Regulation § 301.10.  Having two
nonresidents to choose from, Seabrooks selected Hunter for the position and returned the
selection certificate on April 17, 2003.  Pl.'s Opp'n., Ex. 32.

When management listed the Officer position a third time in 2004, the plaintiff applied,
but management again removed his name from the selection certificate.  *Id.* at 15.  The plaintiff
protested by sending a letter to the Mayor, and as a result, Seabrooks received an amended
certificate on February 6, 2004, which included his name.  *Id.*, Ex. 39.  Five days later the

---

[5]     William Hunter is a 54 year-old resident of Maryland.  Pl.'s Opp'n at 27.

plaintiff was interviewed for the position.  *Id.* at 15.  That same day, Seabrooks sent a

memorandum to her supervisor Ronald Lewis indicating that the interview panel unanimously

recommended Dr. Davis because of his experience as a physician, his experience as a military

officer, his excellent communication skills and his high marks from the interview committee.[6]

*Id.*, Ex. 40.  Lewis accepted the recommendation on February 11, 2004.  *Id.*

### C.  Administrative History

Seabrooks released the plaintiff from his duties as MHI Coordinator on February 15,

2001.  Pl.'s Opp'n, Ex. 12 ("Response to Proposed Reprimand") at 3.  Because he was the only

employee working on the Initiative, all work for the MHI projects ceased.  Seabrooks Dep. 48:6-

16.  Shortly thereafter, on February 27, 2001, the plaintiff filed a complaint with the Inspector

General's Office against Seabrooks, alleging hiring improprieties and retaliation.  Pl.'s Opp'n at

8 & Ex. 15.

In August 2001, the plaintiff filed a complaint with the Equal Employment Opportunity

Commission ("EEOC"), which indicated that he had complained about discrimination earlier that

year.  *Id.*, Ex. 19.  On September 19, 2001, an EEO Officer advised the plaintiff that there was no

basis for concluding that his nonselection for the Analyst position was because of discrimination

or retaliation.  *Id.*, Ex. 23 at 2-3.  The Officer did note, however, that management's acceleration

of selection process was an impropriety that gave the candidate selected for the position

favorable attention.  *Id.*

On April 1, 2002, Officer Brown sent the plaintiff a report indicating her findings as to

his allegations of discrimination for nonselections to the Deputy and Officer positions.  She

---

[6]      The interview panel, chaired by William Hunter, included five people.  Pl.'s Opp'n, Ex. 40.
Seabrooks did not participate in the interview panel, but she did author and send the
memorandum to Lewis.  *Id.*

concluded that there was neither "reasonable cause to believe that Mr. Davis was not selected for the positions he applied for based on sex or age discrimination" nor evidence suggesting retaliation for filing discrimination charges. *Id.*, Ex. 27 at 3. Nonetheless, she predicted that the plaintiff would continue to be rejected for positions offering upward mobility in Family Health. *Id.* In line with this prediction, Seabrooks sent a memorandum on December 23, 2002 to the Supervisory Staffing Specialist at the D.C. Department of Personnel requesting that the plaintiff be left off future selection certificates for the Deputy and Officer positions based on a lack of knowledge and skills needed for the position.[7] Pl.'s Opp'n, Ex. 31. The EEOC later determined that this action constituted retaliation. *Id.*, Ex. 43.

The plaintiff amended his EEOC complaint seven times from 2002 to 2003.[8] *Id.* at 9, n.8 & Ex. 19. He also filed four notices of claims with the defendant, alleging retaliation based on alleged whistleblowing activity between 2001 and 2005.[9] Davis Decl. ¶ 32. Having not received the relief sought, the plaintiff initiated this suit on October 27, 2004.

---

[7]     Seabrooks sent this memorandum the same day that she rejected the plaintiff's second application for the Deputy position. Pl.'s Opp'n, Ex. 30.

[8]     The plaintiff filed the amendments on April 3, 2002; April 30, 2002; November 26, 2002; March 13, 2003; June 26, 2003; September 17, 2003, and; November 10, 2003. Pl.'s Opp'n, Ex. 19.

[9]     The plaintiff's opposition states that he filed five notices of claims between 2001 and 2004. Pl.'s Opp'n at 16. However, there are only three actual notices in evidence and only one cover letter. *Id.*, Ex. 44 ("notices of claims"). Additionally, the notices of claims only reflect dates between 2003 and 2006.

# III.  ANALYSIS

## A.  The Plaintiff Fails to Comply with Local Civil Rule 7.1(h)

### 1.  Compliance with Local Civil Rule 7.1(h)

The Local Rules supplement the Federal Rules of Civil Procedure and should be construed in harmony with them.  Local Civil Rule 1.1(a); *Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002).  In the United States District Court for the District of Columbia Local Civil Rule 7.1(h) provides in pertinent part:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement.  An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. . . . In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

Local Civil Rule 7.1(h).  "Requiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purpose."[10]  *Twist v. Meese*, 854 F.2d 1421, 1424 (D.C. Cir. 1988) (quoting *Gardels v. Cent. Intelligence Agency*, 637 F.2d 770, 773 (D.C. Cir. 1980)), *cert. denied sub. nom. Twist v. Thronburgh*, 490 U.S. 1066 (1989).  First, the moving party's statement should describe the material facts and direct the court to such references in the record supporting his position.  *Id.*  Then the opponent has the opportunity to file a counterstatement crystallizing the genuine issues of material facts with support from evidence in

---

[10]  In *Twist*, the rule to which the court referred was an excerpt of Local Civil Rule 108(h).  The excerpt as it is stated in *Twist* is identical to the language of Local Civil Rule 7.1(h).

the record.  *Id.*  Adhering to this procedure focuses the court on the pertinent parts of the record, "distinguishes disputed from undisputed facts," and isolates those facts that are material.  *Id.*

When counsel fails to meet their obligations, "a district court should not be obligated to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make its own analysis and determination of what may, or may not, be a genuine issue of material fact."  *Id.* at 1425.  Similarly, a plaintiff should not rely on its "relevant facts" section to meet its burden under Local Civil Rule 7.1(h), especially if the plaintiff's presentation of the facts is not concise and mixes factual allegations with legal argument.  *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996).   To do so would "improperly plac[e] the burden on the court, rather than on the opposing party or his counsel, to 'winnow the wheat from the chaff.'"  *Id.* (quoting *Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990)).  Consequently, disregard of the Local Civil Rules[11] "may be fatal to the non-complying party."  *Twist*, 854 F.2d at 1424, 1425 (also warning that "[w]hen counsel fails to discharge this vital function, he may not be heard to complain that the district court has abused its discretion by failing to compensate for counsel's inadequate effort").

### 2.  The Plaintiff Failed to File a Statement of Undisputed Material Facts in Accordance with Local Civil Rule 7.1(h)

The defendant includes a four-page "Statement of Material Facts As to Which There Is No Genuine Dispute" ("Statement of Undisputed Material Facts"), which sets forth facts supporting its position that the plaintiff was inadequately performing his duties as a Public Health Analyst and was intent on finding a position of greater responsibility.  Def.'s Statement of

---

[11]     Local Civil Rule 1.1(a) states that "[t]hese Rules govern all proceedings in the United States District Court for the District of Columbia."  The court also ordered the plaintiff to adhere to Local Civil Rule 7.1(h) in paragraph 2 of the court's standing order, issued May 13, 2005.

Facts.  Every factual statement includes a citation to the record or depositions.  *Id.*  The

plaintiff's List of Disputed Material Facts ("List of Disputed Facts"), on the other hand, includes

only a one-page statement of disputed material facts, consisting of eight one-sentence entries.

Pl.'s Opp'n at 35.  Of the eight disputed material facts, only two cite to the record: a clear

violation of the court's standing order and Local Civil Rule 7.1(h).  *Id.*

    Sadly, this is but one example of the plaintiff's disregard for the Local Civil Rules.  The

plaintiff has filed nine motions for extensions of time,[12] and, as the court indicated in a minute

order on November 2, 2006: "This case is quickly getting out of hand."  Minute Order (Nov. 2,

2002).  In response to the plaintiff's final request for an extension of time to file its opposition to

the instant motion, the court noted that the plaintiff's request violated two clear orders of the

court.  Indeed, the court warned the plaintiff that "failure to timely file a response to the

defendant's summary judgment motion may result in the court treating the motion as conceded

and dismissing the case."  Minute Order (Jan. 8, 2007).

    The plaintiff's cavalier disregard for the Local Civil Rule 7.1(h) again strains the court's

tolerance.  The court permitted the plaintiff an extension of time to file its opposition, and yet the

plaintiff omitted references to the record in all but two of the purported issues of material fact.

Pl.'s Opp'n at 35.  Thus, the health of the plaintiff's case remains in serious doubt.  On the one

hand, it is the court's prerogative "to manage its docket, and [in] its discretion to determine how

best to accomplish this goal."  *Jackson*, 101 F.3d at 151.  And yet, on the other hand, dismissing

a potentially meritorious claim is severe, and this approach "should only be applied to egregious

conduct."  *Burke*, 286 F.3d at 518.  With these competing principles in mind, the court proceeds

through the plaintiff's quagmire of conjecture.

---

[12]    The court notes that the defendant too has also failed to demonstrate the level of professionalism
befitting practice in a federal court, having requested six extensions of time.

### B.  The Court Grants in Part and Denies in Part the Defendant's Motion for Summary Judgment

### 1.  Legal Standard of a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir.

1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

## 2. Legal Standard for an Age and Sex Discrimination Claim

Generally, to prevail on a claim of discrimination under Title VII or the ADEA, a plaintiff must follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action;

and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004).  To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate "facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982); *Miller v. Lyng*, 660 F. Supp. 1375, 1377 (D.D.C. 1987).  Such an inference is created if the plaintiff can show (1) he belongs to the statutorily protected age group; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000); *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999); *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 26 (D.C. Cir. 1997) (citing *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983)).

   "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253.  If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254.  To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.*  The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.*  Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

13

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted).  At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka*, 156 F.3d at 1290) (en banc).  The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation and (3) any further evidence of discrimination that may be available to the plaintiff.  *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment.  *Aka*, 156 F.3d at 1289.  Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case.  *Id.* at 1291.

### 3.  The Plaintiff's Age Discrimination Claims

The court assumes the plaintiff alleges four instances of age discrimination.[13]  These claims derive from his nonselections to the Analyst, Officer and Deputy positions and a denial of comparable pay.  Pl.'s Opp'n 22-31.  Because the plaintiff fails to establish a prima facie case for his nonselection to Officer position and because the plaintiff fails to demonstrate sufficient evidence of pretext regarding the denial of his pay increase requests, the court grants the defendant's motion for summary judgment as to these claims.  Because the plaintiff demonstrates

---

[13]     In his opposition, the plaintiff claims the defendant's decisions to not promote him were discriminatory.  *See generally* Pl.'s Opp'n at 23-29.  The court assumes the plaintiff draws attention to Hunter and Whitmore's ages in an attempt to connect his nonselections to age discrimination.  Pl.'s Opp'n at 23, 27.

evidence of pretext for his nonselections to the Analyst position and to the Deputy position, the

court denies the defendant's motion for summary judgment as to these claims.

### a.  The Plaintiff Fails to Establish a Prima Facie Case for his Nonselection to the Officer Position

One of the nonselections the plaintiff alleges constituted age discrimination is the

selection of Dr. Davis for the Officer position on February 11, 2004.  Pl.'s Opp'n, Ex. 40.  The

defendant notes, however, that the plaintiff fails to provide any evidence indicating the age of Dr.

Davis.  Def.'s Mot. at 16.  It is well settled that establishing a prima facie case for age

discrimination requires the plaintiff to show that the person hired is "substantially younger" than

the plaintiff.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).  Because the

plaintiff has not provided evidence indicating Dr. Davis's age, the plaintiff has not made out a

prima facie case of age discrimination for his nonselection for the Officer position; and therefore,

the court grants the defendant's motion for summary judgment for this claim.[14]

As for the remaining two alleged instances of age discrimination – the December 20,

2001 selection of Whitmore for the Analyst position and the April 17, 2003 selection of Hunter

for the Deputy position – the defendant does not dispute that the selectees were substantially

younger than the plaintiff[15] or that the employer sought applicants and filled the position with

substantially younger employees.  Def.'s Mot. at 11.  The defendant, however, does contend that

---

[14]    Even assuming the plaintiff established a prima facie case, the plaintiff still fails to show that the defendant's legitimate, non-discriminatory reason for hiring Dr. Davis was false, and that discrimination was the real reason.  *Weber v. Battista*, 2007 WL 2033254, at *6 (D.C. Cir. Jul. 17, 2007).

[15]    The plaintiff states that the selectee for the Deputy position, Hunter, is 54, Pl.'s Opp'n at 27, whereas his declaration states that Hunter is 53, Davis Decl. ¶ 22.  Despite this discrepancy, Hunter remains substantially younger than the plaintiff, *see generally Grosjean v. First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003) (explaining that an age difference of ten or more years is sufficiently substantial).

the plaintiff was not qualified for the positions he sought.  *Id.*  Specifically, the defendant notes that despite being qualified for the positions by years of service, the plaintiff lacked the requisite level of education and breadth of experience in the field, and he had a history of "sloppiness and lack of professionalism" as an Analyst.  *Id.* at 11, 20.  The plaintiff presents evidence that he has master's degrees in Sociology and Public Administration, Pl.'s Opp'n, Ex. 12, and that the selection certificates indicate that he was "highly qualified" for the positions, *id.*, Exs. 21, 25 & 29.  The plaintiff also produces a satisfactory performance evaluation, *id.*, Ex. 35, and a newspaper article describing the plaintiff as an employee who goes "above and beyond."  *Id.*, Ex. 2.  Accordingly, because a reasonable juror could conclude that the plaintiff was qualified for the two positions, the plaintiff has established his prima facie case.

### b.  Pretext

### i.  The Plaintiff has Sufficiently Demonstrated Pretext Regarding his Nonselection for the Analyst Position

The court now examines whether the plaintiff has carried the ultimate burden of persuasion in proving that age unlawfully influenced the defendant's hiring decisions for the Deputy or Analyst positions.  *See Burdine*, 450 U.S. at 256.  As its legitimate, independent reason for not selecting the plaintiff for the Analyst position, the defendant asserts that the plaintiff applied for the position "after the applicable cut-off date," Def.'s Mot. at 13, and after Seabrooks made her selection and forwarded it to the Office of Personnel, *id.* at 7, 14.  The defendant also asserts these reasons in paragraph 13 of its Statement of Undisputed Material Facts.  The plaintiff claims, without citing the record, that "there was no emergency to justify an expedited selection process for the Whitmore selection."  List of Disputed Facts ¶ 3.  While the plaintiff has violated Local Civil Rule 7.1(h) by not citing to the record, his conduct is not sufficiently egregious for the court to consider the claim conceded, *see Jackson*, 101 F.3d at 152

(noting that the plaintiff must fail to state the critical issue as a disputed material fact from the outset), and the court examines the merits of the plaintiff's claim that the "emergency" was a pretext for discrimination.  Pl.'s Opp'n at 24-26.

The defendant contends that management considered the vacancy to be an emergency and requested that the D.C. Office of Personnel forward the selection certificate to Seabrooks before the Vacancy Announcement closed.  *Id.*, Ex. 47 (Def.'s Resp. to Pl.'s Interrog. #7) at 9.  Having only one candidate from which to choose, Seabrooks selected Whitmore for the position.  *Id.*  Seabrooks's testimony on this issue, however, is less clear.  When asked whether there was an emergency in filling Whitmore's position, she testified:

> We had entered into an agreement with the Department of Health Services using some of the bonus dollars from the tanner program to initiate a team take charge program.  *And [Whitmore] was the lead person in that program.*  And in order to have utilized those funds, *we really needed someone in that position to actually lead and direct the program.*  So I don't know if you would characterize that as an emergency, but that was a priority issue that we were addressing.[16]

Seabrooks Dep. 246:18-247:5 (emphasis added).  She further explained that "to make the partnership really true and to be on point with the resources that we had available to us and expounding of the budget for that year, *it made sense to have someone there immediately doing the work*."  *Id.* at 247:8-12 (emphasis added).

Yet, Seabrooks fails to explain why it was necessary to immediately hire Whitmore for a position that she already occupied.  Stated differently, the defendant fails to address why Whitmore, "the lead person in that program," did not have the authority to "utilize[] those funds" – the purported reason for the emergency.  *Id.* at 246:21-22, 247:1.  Thus, by pointing to

---

[16]    There is conflicting evidence whether the program in question is a "team take charge program," as Seabrooks's testimony indicates or whether it was a "Teens Take Charge" program" as described by the plaintiff.  Pl.'s Opp'n at 24.  This discrepancy is irrelevant as Seabrooks's testimony indicates that Whitmore was already the lead person in the program.

Seabrooks's concession that Whitmore was already the "lead person" in the program, the plaintiff adequately rebuffs the defendant's reason for expediting the application process. Pl.'s Opp'n at 24 & Ex. 24.  Furthermore, the EEO investigation concluded that "it was a betrayal of trust for candidates to believe that they were being considered, and in the case of Mr. Davis, a D.C. resident, [he] would have had a residency preference."  Pl.'s Opp'n, Ex. 23.

The plaintiff's evidence is sufficient to allow a jury to infer discrimination. *Aka*, 156 F.3d at 1292.  As an initial matter, because she had already not selected the plaintiff for both the Deputy and the Officer positions, a jury could infer that Seabrooks was aware that the plaintiff would apply for the Analyst position.  Davis Decl. ¶¶ 18-20.  The plaintiff also presents evidence that when viewed together is sufficient for a jury to infer a discriminatory purpose. *Aka*, 156 F.3d at 1289.  For example, the defendant does not contest the plaintiff's assertion that Whitmore was substantially younger than the plaintiff, and when Seabrooks took over as Chief of Family Health, the plaintiff was the oldest employee working for Family Health.  Pl.'s Opp'n at 23; Def.'s Mot. at 11; Davis Decl. ¶¶ 7, 22.  Moreover, Seabrooks had previously demonstrated animus toward the plaintiff by insisting that the plaintiff chauffeur her son to camp or school, or drive her home or to activities unrelated to work.  Pl.'s Opp'n at 5; Davis Decl. ¶ 9.  She also asked Deputy Pryor to "get rid of Mr. Davis" in front of the plaintiff.  Pl.'s Opp'n at 5; Davis Decl. ¶ 11.  Finally, she gave Deputy Pryor the plaintiff's office, and moved the plaintiff to a secretary's smaller office.  Davis Decl. ¶ 11.  Because the plaintiff offers ample evidence discrediting the defendant's legitimate, non-discriminatory reason and shows that a jury could conclude his nonselection was based on discrimination, the court denies the defendant's motion for summary judgment as to this claim. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (observing that "disbelief of the reasons put forward by the defendant (particularly if

disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination").

### ii.  The Plaintiff has Sufficiently Demonstrated Pretext Regarding his Nonselection for the Deputy Position

As a legitimate, independent reason for the plaintiff's nonselection, the defendant explains that it did not select the plaintiff for the Deputy position because his "qualifications were inferior" to the other candidates.  Def.'s Mot. at 13; *see* Pl.'s Opp'n, Exs. 14, 31 (citing examples of the plaintiff's poor job performance).  The plaintiff counters that the D.C. Office of Personnel deemed him "[h]ighly [q]ualified," and that Seabrooks manipulated the selection process to exclude him to sidestep the residency requirement of D.C. Municipal Regulation § 301.10.[17]  Pl.'s Opp'n at 12-13 & Ex. 30.  In support of this allegation, the plaintiff presents evidence that on December 23, 2003 Seabrooks sent a memorandum to the D.C. Office of Personnel requesting the plaintiff's name be excluded from future selection certificates for the Deputy position, and thirteen days later, on January 6, 2003, a second selection certificate for the Deputy position listed only Hunter and another nonresident as eligible candidates.[18]  *Id.*, Exs. 31, 32.  After interviewing the candidates, the defendant selected Hunter for the position on April 17, 2003.  *Id.*, Ex. 32.

The plaintiff cites *Barnette v. Chertoff* as authority for the proposition that manipulation of the selection process is evidence of pretext.  Pl.'s Opp'n at 27; 453 F.3d 513 (D.C. Cir. 2006).

---

[17]     D.C. Municipal Regulation § 301.10 states:  "[t]o fill a position in the Career Service or the Management Supervisory Service where two (2) or more applicants are equally qualified, the applicant with residency preference shall be listed and selected ahead of the non-preference candidate . . . ."

[18]     The plaintiff also points to Hunter's recollection that he only applied once for the position, Hunter Dep. 9:12-17, yet "magically" his name appeared on two separate selection certificates, Pl.'s Opp'n at 27 & Exs. 30, 32.

*Barnette* clearly states that "suspicious hiring practices, together with statistical and anecdotal evidence of discrimination, were sufficient to create an inference of pretext." *Barnette*, 453 F.3d at 518 (citing *Krodel v. Young*, 748 F.2d 701, 711 (D.C. Cir. 1984)).[19]  Here, in addition to the memorandum requesting the plaintiff's name be taken off future selection certificates, Pl.'s Opp'n, Ex. 31, the plaintiff provides selection certificates indicating he was highly qualified for the position, Pl.'s Opp'n, Ex. 30.  Thus, the plaintiff has rebuffed the defendant's basis for excluding the plaintiff from the selection certificate and shown evidence of "suspicious hiring practices."  Furthermore, the defendant does not contest the plaintiff's assertion that Hunter is substantially younger than the plaintiff.  Davis Decl. ¶ 22; Def.'s Mot. at 11.  Based on the totality of the circumstances, the court determines that a jury could infer discrimination and denies the defendant's motion for summary judgment as to this claim.  *Aka*, 156 F.3d at 1289, 1291.

### c.  The Plaintiff Fails to Demonstrate Pretext as to his Comparable Pay Claim

Assuming, *arguendo*, that the plaintiff can establish a prima facie case for the defendant's denials of comparable pay, the plaintiff still fails to rebut the defendant's legitimate independent reasons for taking the action.  The defendant represents in its Statement of Undisputed Facts (and accompanying citations to the record) that the plaintiff was not adequately carrying out his responsibility as MHI Coordinator.  Statement of Undisputed Facts ¶¶ 5, 7.  In addition, the defendant asserts that the plaintiff made serious errors in judgment as MHI Coordinator.  *Id.* Specifically, the defendant states that Seabrooks denied the plaintiff a pay increase because, as

---

[19]     This circuit recently confirmed that "[i]n order to prove the [defendant's] explanations for alleged acts of discrimination . . . are pretextual, [the plaintiff] must show '*both* that the reason was false, *and* that discrimination . . . was the real reason.*" *Weber v. Battista*, No. 01-00862, 2007 WL 2033254, at *6 (D.C. Cir. Jul. 17, 2007).

MHI Coordinator, the plaintiff used old data for producing a Men's Health pamphlet; he spent

over $57,000 to develop calendars for the MHI; and he was unable to "develop a well-thought

out, and comprehensive written strategy for the Men's Health or Fatherhood Initiative, as

required . . . prior to the approval for any specific activities." *Id.* ¶ 7.

    The plaintiff fails to rebuff these legitimate, independent reasons.  Rather, the plaintiff

refers (without citation) to the "Defendant's Office of Personnel, which deemed him 'highly

qualified,'" Pl.'s Opp'n at 30, and summarily concludes (again without citation) that "[p]rior to

February, 2001, Plaintiff did not show any signs that he was not carrying out his

responsibilities."[20]  List of Disputed Facts ¶ 8.  Furthermore, the plaintiff's assertion that his

strategic plan for MHI did not "receive[] any negative feedback" is simply incorrect.  Pl.'s Opp'n

at 5; Davis Decl. ¶ 10.  The evidence indicates that Seabrooks instructed him to "revisit [the]

workplan from a more global strategic perspective."  Pl.'s Opp'n, Ex. 9.  Because the plaintiff

has not rebutted the specific reasons set forth by the defendant for denying the plaintiff a pay

increase, the court grants the defendant's motion for summary judgment on this claim.  *See Fox*

*v. Am. Airlines, Inc.*, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003) (stating that "[w]hen a

plaintiff files a response to a motion to dismiss but fails to address certain arguments made by

the defendant, the court may treat those arguments as conceded").

### 4.  The Court Grants in Part and Denies in Part the Defendant's Motion for Summary Judgment on the Sex Discrimination Claims

    The plaintiff alleges two instances of sexual discrimination: first, denial of comparable

pay as MHI Coordinator, and second, his nonselection for the position of Analyst.  Pl.'s Opp'n at

---

[20]     The court observes that, the plaintiff again violated Local Rule 7.1(h) by not citing to the record in his List of Disputed Material Facts, but the conduct is not sufficiently egregious for the court to consider the claim conceded.  *See Jackson*, 101 F.3d at 152 (noting that the plaintiff must fail to state the critical issue as a disputed material fact from the outset).

4, 9-10.  The court grants summary judgment for the denial of comparable pay for the reasons

discussed *supra*.  As to the second claim, because the plaintiff establishes a prima facie case of

discrimination and provides sufficient evidence of pretext, the court denies the defendant's

motion for summary judgment.

### a.  The Plaintiff's Establishes a Prima Facie Case
### for his Nonselection for the Analyst Position

Ordinarily, to establish a prima facie case of sex discrimination, the plaintiff must show

that (1) he is a member of a protected class; (2) he was similarly situated to an employee who

was not a member of the protected class; and (3) he and the similarly situated employee were

treated disparately.  *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999).  But when the

plaintiff is a male, he "is a member of a historically favored group, and hence does not belong to

a protected class." *Bell v. Runyon*, 1997 WL 540814, at *2 (D.D.C. July 17, 1997); *Bryant v.

Leavitt*, 475 F. Supp. 2d 15, 25-26 (D.D.C. 2007).  As a male, the plaintiff may still establish a

prima facie case if he presents evidence of background circumstances that support an inference

of discrimination.[21]  *Bell*, 1997 WL 540814, at *2; *see also Bryant*, 475 F. Supp. 2d at 25.  There

are two types of evidence that can constitute "background circumstances": (1) evidence

indicating that an employer has some reason or inclination to discriminate against males and (2)

"evidence indicating that there is something 'fishy' about the facts of the case at hand that raises

an inference of discrimination." *Harding*, 9 F.3d at 153.  "[T]he second type of 'background

circumstance' may create a prima facie case by itself." *Id.*

The plaintiff offers evidence of background circumstances in his deposition testimony

that indicates that all the men Seabrooks hired "always seemed to have a poor outcome in terms

---

[21]     "Such a showing replaces a minority plaintiff's showing of protected status." *Bell v. Runyon*,
1997 WL 540814, at *2 (D.D.C. July 17, 1997); *see also Harding v. Gray*, 9 F.3d 150, 153 (D.C.
Cir. 1993).

of their working relationship with her and then their ultimate departure." Brooks Dep. 69:19-70:6.  In contrast, she had a good relationship with women.  *Id.* at 100:11-12.  Second, Brooks indicated that Seabrooks encouraged her to admonish the plaintiff, but not any other Family Health employee.  *Id.* at 158:17-159:3.  Also relevant is the fact that Seabrooks moved the plaintiff to a different building in March 2002.  Pl.'s Opp'n at 13 & Ex. 19.  He was the only Family Health employee reporting to Seabrooks in that building.  *Id.* at 13.  As a result of the move, he was isolated from his collegues, and he lost his parking privileges.  *Id*. at 13.  Lastly, as described *supra*, the circumstances surrounding Seabrooks's acceleration of Whitmore's selection for the Analyst position were sufficiently "fishy" to create an inference of discrimination.  *See* discussion *supra* Part III.B.3.b.i; *see also Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C. Cir. 1983) (concluding that a plaintiff "given little or no consideration for the position" coupled with a supervisor's cursory review of the promotee's qualification created an inference of discrimination); *Daye v. Harris*, 655 F.2d 258, 260, 263 (D.C. Cir. 1981) (holding that "irregular procedures" coupled with facts that "black nurses . . . received a disproportionate number of promotions" created an inference of discrimination).  Accordingly, the plaintiff establishes a prima facie case for his nonselection to the Analyst position.

### b.  The Plaintiff Demonstrates Pretext

Having established a prima facie case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal quotation marks omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  The defendant submits that the plaintiff applied for the Analyst position after the D.C. Office of Personnel had forwarded the selection certificate to Seabrooks, and after she had selected Whitmore.  Def.'s Mot. at 14.  As

previously demonstrated, the plaintiff rebutted the defendant's explanation for selecting

Whitmore before the vacancy announcement closed because Whitmore was already "the lead

person in that program," Seabrooks Dep. 246:21-22, and the defendant does not explain why

Whitmore could not use the funds allocated for the program, nor did it offer any other reason for

the purported emergency.  Furthermore, the plaintiff asserts that Seabrooks denied the plaintiff's

request for a pay increase to DS-14 even though two younger females performing comparable

work were being compensated at the DS-14 level.  Davis Decl. ¶ 8.  Based on the evidence and

because the plaintiff rebutted the defendant's proffered reason, a jury could infer that sex

discrimination played a role in the plaintiff's nonselection for the Analyst position.  *Aka*, 156

F.3d at 1292 (explaining that "[e]vents have causes; if the only explanations set forth in the

record have been rebutted, the jury is permitted to search for others, and may in appropriate

circumstances draw an inference of discrimination").  Accordingly, the court denies the

defendant's motion for summary judgment as to this claim.

**5.  The Court Grants in Part and Denies in Part the Defendant's Motion for Summary Judgment as to the Retaliation Claims and Grants the Defendant's Motion for Summary Judgment as to the Plaintiff's Hostile Work Environment Claims**

The plaintiff's retaliation claims consist of the defendant's refusal to promote the plaintiff

to the Analyst, Officer and Deputy positions, and several instances of alleged materially adverse

conduct by the defendant.  Pl.'s Opp'n at 22-33.  The plaintiff's hostile work environment claims

include only general statements[22] of materially adverse conduct.  *Id.* at 32-34.  Because the

---

[22]      The plaintiff claims "efforts to discipline," "bogus assignments," "unfair criticism," "demeaning behavior," exclusion from consideration for promotions, isolation, "ignoring D.C. Inspector General's directive to investigate retaliation," "violating the Inspector General's directive not to take adverse personnel actions," "denying his personnel rights to challenge his demotions, subjecting him to heightened scrutiny, refusal to provide him assignments, failure to include him on promotion certificates, setting him up for failure in the Epilepsy Program, making false

plaintiff fails to establish a prima facie case for retaliation in the denial of the Analyst and

Officer positions, and because the plaintiff fails to rebut the defendant's legitimate, non-

discriminatory reason for not selecting him for the Deputy position, the court grants the

defendant's motion for summary judgment as to these claims.   The court also grants summary

judgment on the remaining retaliation and hostile work environment claims because the plaintiff

does not cite to the record or make any attempt to provide context for his allegations.

### a.  Legal Standard for Establishing a Prima Facie Case for Retaliation

To prevail on a claim of retaliation, a plaintiff must follow the McDonnell Douglas

framework.  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003)

(applying the McDonnell Douglas framework to a Title VII retaliation claim).   To establish a

prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected

activity; (2) a reasonable employee would have found the challenged action materially adverse;

and (3) there existed a causal connection between the protected activity and the materially

adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415-16 (2006); *see

also Scott v. Kempthrone*, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006).[23]   The plaintiff's

burden is not great: the plaintiff "merely needs to establish facts adequate to permit an inference

of retaliatory motive."  *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).   With regard to the

first prong of the plaintiff's prima facie case of retaliation, statutorily protected activities include

the filing of EEOC complaints.  *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002).   As

for the second prong, "[t]he anti-retaliation provision seeks . . . [to] prohibit[] employer actions

---

allegations against him," "repeated manipulation of the promotion process," exclusion from
management meetings, demands that he act as Seabrooks's chauffer.  Pl.'s Opp'n at 32-34.

[23]    The test to determine retaliation under the ADEA and Title VII is identical.  *Passer v. American
Chem. Soc'y*, 935 F.2d 322, 331 (D.C. Cir. 1991).

that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and

their employers.  And normally petty slights, minor annoyances, and simple lack of good

manners will not create such deterrence."  *Burlington N.*, 126 S. Ct. at 2415 (citations omitted).

Additionally, "the significance of any given act of retaliation will often depend upon the

particular circumstances.  Context matters."  *Id*.  Finally, under the third prong, the plaintiff may

establish a causal connection "by showing that the employer had knowledge of the employee's

protected activity, and that the [retaliatory] personnel action took place shortly after that

activity."  *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*,

759 F.2d 80, 86 (D.C. Cir. 1985)).  To qualify as a causal connection, however, the temporal

proximity between the employer's knowledge of the protected activity and the adverse personnel

action must be "very close."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)

(noting that a three-or-four-month period between an adverse action and protected activity is

insufficient to show a causal connection, and that a 20-month period suggests "no causality at

all").

### i.  The Plaintiff's Prima Facie Case

The plaintiff satisfies the first and second elements of the prima facie case for the

nonselection claims because he filed an EEOC complaint in August 2001, Pl.'s Opp'n at 23, and

the conduct alleged is materially adverse, *see Cones*, 199 F.3d at 521 (noting that denying a

promotion or the opportunity to compete for a promotion is a materially adverse action).

Nonetheless, he fails to make out a causal connection for his nonselections to the Analyst and

Officer positions.

The plaintiff filed his EEOC complaint in August 2001.  Pl.'s Opp'n, Ex. 19.  Yet, the

defendant's nonselection of the plaintiff for the Analyst position occurred in December 2001,

and the nonselection for the Officer position occurred on January 28, 2002. *Id.* at 24 & Ex. 21. Consequently, the three and four month respective delays is too tenuous to support an inference of causation for either of these nonselections. *See Woodruff v. Peters*, 482 F.3d 521, 529-30 (D.C. Cir. 2007) (recognizing the Supreme Court's favorable citation to a case that rejected an inference of causation where the events were three months apart).

The defendant again did not select the plaintiff for the Officer position on September 25, 2002 and on February 11, 2004. Pl.'s Opp'n, Ex. 29. The former nonselection came five months after the closest EEOC amendment on April 30, 2002, and the latter nonselection came three months after the closest EEOC amendment on November 10, 2003. *Id.*, Ex. 19. Therefore, the connections between the nonselections and the EEOC activity are too tenuous to substantiate a causal connection. *Woodruff*, 482 F.3d at 529-30.

On the other hand, the defendant's two nonselections of the plaintiff for the Deputy position on March 8, 2002 and on December 23, 2002, Pl.'s Opp'n, Exs. 21 & 30, are sufficiently close in time to the plaintiff's EEOC complaints to create an inference of causality. *Id.*, Ex. 19, 23 (amended EEOC complaint on March 4, 2002 and November 26, 2002); *Woodruff*, 482 F.3d at 529-30 (reasoning that a factfinder could infer causation if less than a month separated the protected conduct and the alleged retaliation). Accordingly, the plaintiff has established a prima facie case as to these two nonselections. *See Forman*, 271 F.3d at 299 (explaining that the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive").

### ii. The Plaintiff Demonstrates Pretext

As to the surviving claims, the court turns to whether the defendant has "articulate[d] a legitimate, nondiscriminatory reason for the personnel action, after which the plaintiff may

prevail by showing the proffered reason was but a pretext for retaliation." *Underwood v. District of Columbia Armory Bd.*, 816 F.2d 769, 777 (D.C. Cir. 1987) (internal quotation marks omitted) (quoting *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984). The defendant contends that, on March 28, 2002, Seabrooks declined to select the plaintiff or another candidate for the Deputy position because of her "professional knowledge of applicant's work ethics and practice." Def.'s Mot. at 14; Pl.'s Opp'n, Ex. 21. Later that year on December 23, 2002, Seabrooks requested that the Office of Personnel leave the plaintiff off of future selection certificates because he lacks necessary skills and knowledge. Def.'s Mot., Ex. 14. On that same day, Seabrooks rejected the plaintiff for the Deputy position for the same reasons. *Id.* at 14; Pl.'s Opp'n, Ex. 30. The plaintiff, however, rebuts the defendant's proffered reason by noting that the selection certificates indicate that he was highly qualified for the position. *Id.* at 26 & Exs. 21, 30. Because this contradictory evidence gives rise to a genuine issue of material fact as to whether the plaintiff's qualifications, or lack thereof, qualifies as a legitimate non-discriminatory reason, the court denies the defendant's motion for summary judgment as to these claims. *See Weber*, 2007 WL 2033254, at *6.

### iii. The Court Grants Summary Judgment as to the Remaining Retaliation Claims and the Hostile Work Environment Claims

The plaintiff's remaining retaliation and hostile work environment claims are obtuse and unsupported. The plaintiff alleges fifteen acts[24] "which a reasonable person could consider materially adverse." Pl.'s Opp'n at 32-33. But, the plaintiff's haphazard attempt to claim

---

[24]     Four additional acts are alleged in the hostile work environment discussion, but these are also unsupported by citations to the record. Pl.'s Opp'n at 34; *see supra* note 22.

retaliation and hostile work environment fails to meaningfully cite legal support[25] and is

completely devoid of citations to the record.  *Id.* at 32-34.  The court reminds the plaintiff:

> It is not enough merely to mention a possible argument in the most skeletal way,
> leaving the court to do counsel's work, create the ossature for the argument, and
> put flesh on its bones. . . . Judges are not expected to be mind readers.
> Consequently, a litigant has an obligation to 'spell out its arguments squarely and
> distinctly' or else forever hold its peace.

*United States v. Zannino*, 895 F.2d 1, 18 (1st Cir. 1990).  Furthermore, "it is not the obligation of

this court to research and construct the legal arguments open to parties, especially when they are

represented by counsel."  *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003).

Accordingly, because the plaintiff's claims are skeletal and unsupported, the court grants the

defendant's motion for summary judgment on these remaining retaliation and hostile work

environment claims.

### 6.  The Plaintiff's Whistleblower Claims

The plaintiff alleges that the defendant violated the Whistleblower Act by rejecting his

applications for the Deputy, Analyst and Officer positions.  Pl.'s Opp'n at 26.  He also alleges

several instances of allegedly materially adverse conduct by the defendant.  *Id.* at 32-33.  The

court *sua sponte* dismisses as untimely the claims related to alleged retaliatory conduct occurring

before October 27, 2003.  *See* D.C. Code § 1-615.54 (stating that "[a] civil action shall be filed

within one year after a violation occurs").  Because the plaintiff fails to rebut the defendant's

proffered legitimate, independent reasons for not selecting the plaintiff for the Officer position in

2004, the court grants the defendant's motion for summary judgment for that claim.  As to the

plaintiff's remaining claims, the court grants the defendant's motion for summary judgment

---

[25]     The plaintiff offers no legal support for the retaliation claims, and offers only one citation –
without pincite, explanation or analysis – to a Supreme Court case recognizing the legitimacy of a
hostile work environment cause of action.  *Id.*

because the plaintiff fails to substantiate the claims through legal argument or through citation to the record.

### a. Legal Standard to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). "A claim that the court lacks jurisdiction under Article III of the Constitution may not be waived, since the jurisdiction at issue goes to the foundation of the court's power to resolve a case, and the court is obliged to address it *sua sponte*." *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996). The plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-56 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a

Rule 12(b)(1) motion than would be required for Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. Of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### b.  The Court Dismisses *Sua Sponte* the Plaintiff's Claims Before October 27, 2003

Claims brought under the Whistleblower Act must adhere to timeliness requirements. D.C. Code § 1-615.54(a).  A plaintiff's claim is timely if he files a civil action "within one year after a violation occurs or within one year after the employee first becomes aware of the violation." *Id*.  Thus, as the defendant properly notes, the plaintiff's claims under the Whistleblower Act are limited to those alleged materially adverse actions occurring after October 27, 2003. *See* Def.'s Mot. at 13, 18.  Accordingly, the court dismisses *sua sponte* the plaintiff's claims referring to violations of the Whistleblower Act occurring before October 27, 2003.

### c.  The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's Remaining Claims

### i.  Legal Standard for Whistleblower Act

In *Crawford v. District of Columbia*, 891 A.2d 216, 219 (D.C. Cir. 2006), this Circuit described the shifting burden of proof required by the Whistleblower Act.[26]  First, the plaintiff must demonstrate a prima facie case by showing by a preponderance of the evidence that his

---

[26]     The D.C. Circuit also noted that courts should look to *McDonnell Douglas* for guidance on how to interpret the Whistleblower Act. *Crawford v. District of Columbia*, 891 A.2d 216, 221 n.12 (D.C. Cir. 2006).

"protected disclosure" was a "contributing factor" in the alleged "prohibited personnel action" against an employee.  *Id*. at 218-19; *See also* D.C. Code § 1-615.52 (defining those terms under the statute).  The burden then "shifts to the defendant to show by clear and convincing evidence that the plaintiff's dismissal would have occurred for 'legitimate, independent reasons' even if he had not engaged in activities protected under the Act."  *Id*. at 219.  Finally, the jury must be able to find a direct causal link.  *Id*. at 221.

### ii.  Nonselection for the Officer Position in 2004

The plaintiff's claims that the defendant retaliated against him by not selecting him for the Officer position on February 11, 2004.  Pl.'s Opp'n at 26.  The plaintiff contends that his nonselection constituted retaliation for his protected disclosures to the Office of the Inspector General in February 2001 and cooperation with the same through July 2005.[27]  The plaintiff also asserts that his complaints and amended complaints to the EEOC contributed to his nonselection.[28]  *Id.* at 28, 32 n.17 & Ex. 15.   Because of the plaintiff's long history of protected disclosures, the court assumes for purposes of analyzing this claim that he establishes a prima facie case.

Accordingly, the defendant must put forth clear and convincing evidence that the alleged retaliatory conduct was for a legitimate, independent reason.  *Crawford*, 891 A.2d at 219.  Here, the defendant asserts that it did not select the plaintiff because he was less qualified than Dr. Davis.  Def.'s Mot. at 15-16.  Evidence in the record abundantly supports this assertion.  *See id.*, Ex. 17 & 18.  For example, the interview committee unanimously selected Dr. Davis, who had

---

[27]    On November 7, 2003, the plaintiff sent a letter to the mayor referencing several "new" claims submitted to the Inspector General.  Pl.'s Opp'n, Ex. 44.

[28]    The last amendment to the EEOC complaint occurred on November 10, 2003.  Pl's Opp'n, Ex. 19.

the highest qualifications of the four candidates.  *Id.*  Notably, the interview panel designated the

plaintiff as the least qualified for the position.  *Id.*  The plaintiff does not contest these points but

asserts that the whole process was a sham because his name was not on the original selection

certificate and he was only given a "courtesy interview."  Pl.'s Opp'n at 28-29.  The court

disagrees.

The plaintiff acknowledges both that his name was put on the final selection certificate

and that the interview committee evaluated him for the position.  *Id.*  The evaluation form

indicates that the interview committee looked at eight factors when considering each candidate.

Def.'s Mot., Ex. 17 & 18.  The defendant submitted this evaluation sheet with its motion for

summary judgment, and the plaintiff does not contest its legitimacy.  *Id.*, Ex. 17.  Accordingly,

the court is not convinced that the interview was a mere courtesy.

The plaintiff next asserts that the defendant "pre-select[ed]" Dr. Davis for the position

and gave him "special treatment" during the interview process.  Pl.'s Opp'n at 29.  The plaintiff

directs the court to Dr. Davis's deposition in which he states that he was interviewed by two

panels and subsequently, to the director of the health department.  *Id.*  This, however, does not

indicate special treatment.  *See* Def.'s Mot., Ex. 18.  (recommending Dr. Davis for a "follow-up

interview").  While it is unclear if and when follow-up interviews took place, the plaintiff's

allegation of favoritism during the interview selection process is unsupported by evidence.

Additionally, the plaintiff asserts that the legitimate reasons are inadequate because no

one was in the Officer position from 2001 through 2004.  Pl.'s Opp'n at 29.  The plaintiff,

however, fails to make a coherent connection between his nonselection and the period of

vacancy.  *Id.*  Finally, the plaintiff asserts that his nonselection was pretextual because Seabrooks

questioned the plaintiff's "work, ethics and practices" on the selection certificate but gave the

plaintiff a "satisfactory performance evaluation . . . covering that same time period." *Id.* at 29.
But, on the selection certificate for the Officer position, Seabrooks states nothing about the
plaintiff's "work, ethics and practices." *Id.*, Exs. 21, 39.  The plaintiff apparently is confusing
the 2004 Officer position selection certificate with the 2001 Officer position selection
certificate.[29] *Id.*  Furthermore, Seabrooks allegedly issued a satisfactory performance evaluation
in 2001 and 2003, not in 2004.  Davis. Decl. ¶ 12; Pl.'s Opp'n, Ex. 35.  Consequently, because
the plaintiff fails to rebut the defendant's legitimate, independent reasons for not selecting him to
the Officer position, the court grants the defendant's motion for summary judgment for the
plaintiff's 2004 claim of retaliatory conduct under the Whistleblower Act.

### iii.  Other Allegations of Materially Adverse Conduct

The plaintiff lists – in broad, conclusory fashion – instances of materially adverse
conduct by the defendant.  Pl.'s Opp'n at 32-33.  And yet, the plaintiff provides no context for
these allegations and does not cite to the record, making only bald assertions.  *Id.* at 32-33; *see
supra* note 22.  As stated *supra*, "a district court judge should not be obligated to sift through
hundreds of pages of depositions, affidavits, and interrogatories in order to make his own
analysis and determination of what may, or may not be a genuine issue of material disputed
fact."  *Twist*, 854 F.2d at 1425.  The Seventh Circuit has recognized that "perfunctory and
undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived
(even where those arguments raise constitutional issues)."  *United States v. Berkowitz*, 927 F.2d
1376, 1384 (7th Cir. 1991).  As the plaintiff merely lists allegations of materially adverse
conduct without support from the record or legal argument, the court grants the defendant's
motion for summary judgment as to these claims.

---

[29]     As discussed *supra*, the plaintiff's retaliatory claim for nonselections before October 27, 2003 are
time barred.

# IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's

motion for summary judgment.  Specifically, the court court denies the defendant's motion for

summary judgment as to the plaintiff's age discrimination claims for his nonselection for the

Deputy and Analyst positions, as to the plaintiff's sex discrimination claim for his nonselection

for the Analyst position, and as to the nonselections for the Deputy position on March 8, 2002

and December 28, 2002.  The court grants the defendant's motion for summary judgment as to

the plaintiff's age discrimination claims for his nonselection for the Officer position and the

comparable pay claims, as to the plaintiff's sex discrimination claims for the comparable pay

claim, as to the plaintiff's hostile work environment claims, as to the remaining retaliation

claims, and as to claims under the Whistleblower Act arising after October 26, 2003.  The court

also *sua sponte* dismisses the plaintiff's claims under the Whistleblower Act arising on or before

October 26, 2003.  An order consistent with this Memorandum Opinion is separately and

contemporaneously issued this 1st day of August, 2007.

RICARDO M. URBINA
United States District Judge